UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BURCK t/a THE NAKED COWBOY,<br><br>    Plaintiff,<br><br>  v.<br><br>MARS, INCORPORATED and CHUTE GERDEMAN, INC.<br><br>    Defendants. | NO. 08-1330<br><br>Judge Denny Chin |

**PLAINTIFF'S NOTICE OF MOTION TO STRIKE**
**DEFENDANT MARS, INCORPORATED'S**
<u>**FAIR USE AND PARODY AFFIRMATIVE DEFENSES**</u>

**PLEASE TAKE NOTICE** that Plaintiff Robert Burck t/a The Naked Cowboy, through its undersigned counsel, hereby moves before the Honorable Denny Chin, U.S.D.J., Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Room 1020 New York, NY 10007, pursuant to Fed.R.Civ.P. 12(f) to strike the *Eighth* and *Tenth* Affirmative Defenses set forth in the Answer filed by Defendant Mars, Incorporated.

**PLEASE TAKE FURTHER NOTICE** that Movant shall rely upon the attached Brief.

              HALBERSTADT CURLEY LLC

              By: _____
              Scott M. Rothman
              1100 E. Hector Street, Suite 425
              Conshohocken, PA 19428
              610 834 8819 (ph)
              610 834 8813 (fx)
              srothman@halcur.com
              *Attorney for Plaintiff*

Date: 4/25/08

*Of Counsel to Plaintiff*:

KEVIN T. MULHEARN, P.C.
Kevin T. Mulhearn
60 Dutch Hill Rd. # 8
Orangeburg, NY 10962
(845) 398-0361 (ph)
(845) 398-3836 (fx)
kmulhearn@ktmlaw.net

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BURCK t/a THE NAKED COWBOY,<br>　　　　　　　　Plaintiff,<br>　　v.<br><br>MARS, INCORPORATED and CHUTE GERDEMAN, INC.<br>　　　　　　　　Defendants. | NO. 08-1330<br><br>Judge Denny Chin |

BRIEF IN SUPPORT OF
PLAINTIFF'S MOTION TO STRIKE
DEFENDANT MARS, INCORPORATED'S
<u>FAIR USE AND PARODY AFFIRMATIVE DEFENSES</u>

**I.　INTRODUCTION**

Plaintiff herein, Robert Burck t/a The Naked Cowboy ("The Naked Cowboy"), moves pursuant Fed.R.Civ.P. 12(f) to strike, on the grounds of legal insufficiency, the fair use and parody affirmative defenses pled by Defendant Mars, Incorporated ("Mars"). As set forth in the Complaint, The Naked Cowboy is a celebrity persona who enjoys particular notoriety in New York City as a charismatic street performer. Mars, the global purveyor of candy including "M&Ms," ran a series of advertisements in Times Square—the world's unofficial marketing mecca—which featured animated M&M characters dressed to mimic The Naked Cowboy. The Complaint asserts causes of action for (1) false implied endorsement under § 43(a) of the Lanham Act and (2) infringement of the right of publicity as codified under New York state law.

Mars has answered the Complaint and asserts affirmative defenses pursuant to the doctrines of parody and fair use, which derive from the *First Amendment* of the U.S.

Constitution. The Naked Cowboy's motion to strike these defenses is based upon clear precedent which precludes any attempt to claim a parodic use where the use is a commercial one and is for the purpose of selling a product wholly unrelated to the parody. The arguments set forth below fall into three main sections. First, there is a general discussion of the strict limitations that courts have placed on the parody defense when asserted in a commercial setting. Second, there is a discussion of case law from this circuit which clearly distinguishes parodies that constitute an actual product and which may be (but are not always) protected fair uses; and parodies that are merely used for the always unprotected purpose of advertising a separate "unrelated" product. Finally, it is noted that there appears to be no precedent where the parody defense was successfully asserted against a right of publicity claim.

## II.  RELEVANT FACTS

For the past ten years, the Plaintiff herein has made his living in Times Square performing as The Naked Cowboy. Complaint, ¶ 5. As a musician and street entertainer, The Naked Cowboy has performed live in the heart of Times Square for hundreds of thousands of people. Id. at ¶ 6. The Naked Cowboy performs at all times in his trademarked and unmistakable costume consisting of a white cowboy hat, a pair of white cowboy boots, an acoustic guitar, and—of course—his signature white briefs. Id. The Naked Cowboy's street performances have become a fixture of the New York City landscape, and have been cited by many sources as one of the City's top ten tourist attractions. Id. As a result of a combination of hard work and marketing savvy, The Naked Cowboy has developed himself into a well-recognized celebrity persona in New York and beyond. Id. at ¶ 20.

The Naked Cowboy has capitalized on his celebrity status by appearing on television, on radio, and in a variety of other live settings including Mardi Gras in New Orleans. Id. at ¶¶ 10-19. He has appeared over the years in music videos, game shows, talent shows, reality shows, and even a video game. Id. He has also developed product endorsement relationships with various companies and has licensed the use of his name and image for the purpose of advertising on multiple occasions. Id. at ¶¶ 22-24. In February 2007, he was featured in a Super Bowl commercial, the unofficial pinnacle of advertising exposure. Id. at ¶ 23.

Apparently recognizing the commercial value of The Naked Cowboy persona, Mars published a series of advertisements featuring animated M&M candy characters adorned in The Naked Cowboy's inimitable attire—white cowboy hat, white cowboy boots, acoustic guitar and white briefs. Id. at ¶¶ 25-26. One of these advertisements was displayed on an oversized video billboard in Times Square, and ran on a continuous loop every few minutes from April 2007 through January 2008. Id. at ¶¶ 26, 29. The other advertisement was a pictorial version of the guitar-toting M&M which was likewise dressed to represent The Naked Cowboy, and which bore the designation "Peanut Cowboy" on its cowboy hat. Id. at ¶ 30. In running these ads, Mars plainly endeavored to sell its candy through the use of The Naked Cowboy's trademarked persona and celebrity good will. Id. at ¶ 25. Mars has neither compensated The Naked Cowboy for the use of his likeness in these commercial advertisements, nor did Mars seek his permission to use same. Id.

The Naked Cowboy's Complaint sets forth claims for (a) trademark infringement on the theory of false endorsement; and (b) a violation of his New York statutory right of

publicity. Id. at ¶¶ 40-51. In its Answer, Mars acknowledges that it ran the foregoing advertisements and that it featured an M&M dressed in the above-described "cowboy attire." Answer, ¶¶ 26, 30. Mars further admits that it did not compensate The Naked Cowboy for its appropriation of his persona, nor did Mars obtain any licenses or rights for same. Id. at ¶ 25. Mars does, however, set forth two affirmative defenses which are the subject of this motion: parody and fair use. Id. at "Eight Affirmative Defense" and "Tenth Affirmative Defense." It is argued below that neither defense is viable as a matter of law with respect to either of The Naked Cowboy's causes of action.[1]

### III. ARGUMENT

#### A. Legal Standard

Under Fed.R.Civ.P. 12(f), "[u]pon motion made by a party within 20 days after service of the pleading upon the party… the court may order stricken from any pleading any insufficient defense… ." In Copyright.net Music Publishing LLC v. MP3.com, 256 F. Supp. 2d 214 (S.D.N.Y. 2003), the plaintiff music publisher filed motions pursuant to Rule 12(f) to strike five of the defendant infringer's affirmative defenses, including its "fair use" defense. Ruling that the defendant was collaterally estopped from asserting its fair use defense, the Court granted the motion and struck same from the pleading. Id. at 217. In this case, as discussed below, there is an equally compelling reason to conclude that the fair use and parody defenses are "insufficient." *See also* Sony Financial Services, LLC v. Multi Video Group, Ltd., 2003 U.S. Dist. LEXIS 22248 at *22, No. 03-cv-1730

---

[1] Mars' "Ninth Affirmative Defense" states the Complaint is barred by the "free speech provisions of First Amendment." Although this defense was not separately referenced in The Naked Cowboy's pre-Motion correspondence to the Court, it appears to be a restatement of—and is actually the source of—the defenses of fair use and parody. *See* Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, 886 F.2d 490, 493 (2d Cir. 1989) ("parody is a form of artistic expression, protected by the *First Amendment*").

(S.D.N.Y. Dec. 12, 2003) (striking affirmative defense on the ground of legal insufficiency and observing that "[t]he standard for a motion to strike an affirmative defense under Fed.R.Civ.P. 12(f) is a 'mirror image' of the rule governing a motion to dismiss for failure to state a claim").

### B. The Infringing Advertisements Cannot Constitute Valid Parody as a Matter of Law

In its Answer and Affirmative Defenses, Mars strains mightily to straddle two contradictory positions. Mars refuses to admit that it its advertisements were intended to conjure up the well-known image and celebrity persona of The Naked Cowboy, averring that the animated M&Ms were merely dressed up in "cowboy attire." Answer, ¶¶ 26, 30.[2] By way of affirmative defense, however, Mars asserts that its advertisements constitute a parody of The Naked Cowboy, a position which necessitates an acknowledgment that the challenged activity constitutes a use—albeit an alleged fair use—of the trademark in question. See Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group, 886 F.2d 490, 494 (2d Cir. 1989) ("the keystone of parody is imitation"); MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc., 70 U.S.P.Q.2D (BNA) 1046, 2004 U.S. Dist. LEXIS 3644 at *39 (S.D.N.Y. Mar. 8, 2004) ("[a] parody is characterized by an attempt to mimic an original, expressive, and usually famous work"). For the purposes of this Motion, The Naked Cowboy will presume that Mars's evasive denials have not vitiated its parody defense which requires, first and foremost, an acknowledgement of mimicry.

---

[2] In making this pleading, Mars fails to explain how white underwear briefs qualify as "cowboy attire."

### 1.  The Parody Defense Has Limited Application in a Commercial Context

It is well-recognized that a free speech or "fair use" defense such as parody is viable only where the use of another's mark is "to communicate an idea rather than to market a product." *Gilson on Trademarks,* § 11.08[4][l] (2007).  While the law has recognized the parody defense in certain commercial settings, the requirement that a valid parody must embody an expressive idea or satirical message has persisted unabated.  This section discusses, in general fashion, the limited applicability of the parody doctrine when raised as a defense to a commercial use of a trademark.

In Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579-94 (1994), the Supreme Court set forth the contours of parody as a "fair use" defense to copyright infringement.  In so doing, the Court held that a rap song which spoofed the 1960s rock and roll hit "Oh Pretty Woman" was a valid parody given that it communicated satirical and expressive ideas.  In the wake of this decision, the courts of this Circuit have relied upon the Court's explication of the parody defense when asserted against trademark claims such as the one alleged herein.  *See e.g.* Harley-Davidson, Inc. v. Grottanelli, 164 F.3d 806 (2d Cir. 1999) (discussed below).

The Court in Campbell made clear that a true parody must contain or consist of a message, or some form of "commentary," with regard to the work (or trademark) allegedly being lampooned.  The Court began its discussion with a dictionary definition of parody as a "literary or artistic work that imitates the characteristic style of an author or a work for comic effect or ridicule."  510 U.S. at 580 (quoting *American Heritage Dictionary* 1317 (3d ed. 1992)).  Noting that a true parody embodies some degree of commentary and expressive idea, the Court added that "[l]ike less ostensibly humorous

6

forms of criticism, [parody] provides social benefit, by shedding light on an earlier work, and, in the process, creating a new one." Id. at 579. The Court then turned to the applicability of the parody defense in a commercial context, observing as follows:

> [T]he heart of any parodist's claim to quote from existing material is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works. [citing MCA, Inc. v. Wilson, 677 F.2d 180, 185 (2d Cir. 1981)]. If, on the contrary, the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors, like the extent of its commerciality, loom larger.

Id.

Relying on these principles, the Campbell Court held that the rap version of the Roy Orbison classic was a valid parody as it was an artistic work which conveyed an obvious and substantive satirical message. While declining to evaluate the content of the message, the Court's ruling turned on the fact that there was a readily ascertainable social message in both the rap lyrics as well as in the style of performance. The Court's holding, therefore, did not alter the long-established requirement that a valid parody must communicate an expressive idea, particularly where the alleged parodist places its parody in commerce. Further, as is discussed in greater detail in § II-B-2, *infra*, the Campbell decision is consistent with a well-settled distinction between a protected parody which is, itself, the commercial product (*e.g.*, a rap song, a Saturday Night Live skit) and unprotected mimicry used for the purpose of promoting a completely unrelated product (such as candy).

The courts of this circuit, both before and after Campbell, have recognized the difference between a substantive parody on the one hand, and the commercial

appropriation of another's trademark on the other. In <u>Cliffs Notes, Inc. v. Bantam Doubleday Dell Publishing Group</u>, 886 F.2d 490, 495 (2d Cir. 1989), the Court observed that a parody exists only where "expression, and not commercial exploitation of another's trademark, is the primary intent." This distinction was reinforced by the <u>Campbell</u> decision's requirement that in order to be expressive, a parody must communicate a message beyond a mere attempt to sell something. *See also* <u>Tin Pan Apple, Inc. v. Miller Brewing co., Inc.</u>, 737 F. Supp. 826 (S.D.N.Y. 1990) ("there is ample authority for the proposition that appropriation of copyrighted [or trademarked] material solely for personal profit, unrelieved by any creative purpose, cannot constitute parody as a matter of law").

Among the decisions which followed and applied <u>Campbell</u>, the Second Circuit's opinion in <u>Harley-Davidson, Inc.</u>, *supra*, is particularly instructive. The plaintiff therein, a well-known manufacturer of motorcycles, brought suit under the Lanham Act against a motorcycle repair shop which had attempted a parodic use of the plaintiff's logo. Relying on <u>Campbell</u>'s elucidation of the limits of the parody defense in the copyright context, the Court held that the use of the mark did not amount to parody as a matter of law. 164 F.3d at 813. It reasoned as follows:

> [the defendant's] mark makes no comment on Harley's mark; it simply uses it somewhat humorously to promote his own products and services, which is not a permitted trademark parody use.

<u>Id.</u>

In view of this post-<u>Campbell</u> holding by the Court of Appeals, it is clear that a parodic use of another's trademark for a purely commercial purpose, unmitigated by any expressive commentary, still cannot serve a valid defense to an infringement claim. In

8

the present case, it is plain from the pleadings that Mars' use of The Naked Cowboy's trademarked image does not amount to the conveyance of an expressive idea and cannot conceivably be viewed as offering substantive commentary on the mark in question. The alleged parodic advertisement by Mars simply brooks no comparison with the patently satirical rap song addressed in Campbell. Mars' use of The Naked Cowboy's mark is far more akin to the impermissible marketing use in Harley-Davidson which the Court rejected as a matter of law. Like the defendant who attempted to spoof the Harley logo to promote its product, Mars' use is nothing more than an advertisement whose only reasonably perceivable message is an invitation to the public to purchase its candy. Such an unadulterated commercial use cannot possibly enjoy the Constitutionally-premised fair use defense of parody.

2. **Use of Another's Trademark or Celebrity Likeness for the Purpose of Selling an Unrelated Product Does Not Qualify as Parody**

As noted above, the most directly analogous authority concerning the alleged parodic use of another's mark in a commercial setting consists of a series of cases where the spoof was utilized in connection with the sale of an unrelated consumer product. The decisions have uniformly held that where the parody itself is not the product, but is merely used to market something else, it is not a valid parody under the law. Thus, even if the use could be deemed colloquially as a parody, it is not shielded from liability under the Lanham Act. The rationale is that a parody which bears no relation to the product it advertises cannot conceivably contain a substantive message or expressive idea with respect to the product.

In <u>Tin Pan Apple, Inc. v. Miller Brewing co., Inc.</u>, 737 F. Supp. 826 (S.D.N.Y. 1990), a rap musical group brought claims for both copyright and trademark infringement against a defendant beer company and its ad agency. The claims arose out of an advertisement which featured a spoof of the members of the rap group by way of actors dressed to mimic the plaintiffs and their rap style. In denying the defendants' bid for a dismissal of the claims, the Court held that the spoof could not constitute a parody as a matter of law. <u>Id.</u> at 832-33. In reaching this result, the Court reasoned that if the alleged parody is used solely in connection with an advertisement to sell a separate unrelated product, it cannot constitute a fair use. <u>Id.</u> at 832. Significantly, the Court observed that the statutory fair use factors need not even be reached where the alleged parody appears in a commercial to sell an unrelated product, noting that the "[t]he commercial's use is entirely for profit: to sell beer." <u>Id.</u> at 832. The applicability of this holding to the present case could not be more direct. While Miller Brewing and its ad agency sought to sell beer by spoofing musical celebrities, Mars's spoof of The Naked Cowboy appears in an ad to sell candy.

The balance of the <u>Tin Pan Apple</u> opinion provides a lengthy discussion of the Second Circuit's view of the parody defense in the context of commercial advertising. Again, the dispositive distinction drawn by the Court (and the authority cited therein) is a distinction between a parody which is the product itself (such as a "Weird Al" Yankovich song or a Saturday Night Live skit) and one which is merely used to sell the defendant's product. The Court relied explicitly on this distinction in <u>D.C. Comics, Inc. v. Crazy Eddie, Inc.</u>, 205 U.S.P.Q. (BNA) 1177 (S.D.N.Y. 1979), where a defendant electronics retailer aired a commercial on local television channels featuring a spoof of a Superman

10

trailer which included the pitch: "Look!... It's a bird!... It's a plane... It's Crazy Eddie." Awarding the plaintiff mark owner preliminary injunctive relief, the Court held that because the defendant's alleged parody was used to sell its unrelated products, its parody defense was legally insufficient. Id. at 1178. Just like Mars' ads have appropriated the unmistakable essence of The Naked Cowboy, the Court observed that the Crazy Eddie ad "capture[d] the total concept and feel" of the Superman trailer. Id. (internal citations omitted). *See also* Schieffelin & Co. v. Jack Co. of Boca, Inc., 850 F. Supp. 232, 248 (S.N.D.Y. 1994) (a valid parody under the Lanham Act exists only where "the joke does not serve to identify the owner of the lampooned trademark as the... sponsor... of the parodist's product").

Perhaps the most clear-cut delineation of the distinction between parody "as the product" and parody used "to promote the product" appears in Steinberg v. Columbia Pictures Industries, Inc., 663 F. Supp. 706 (S.D.N.Y. 1987). The plaintiff in Steinberg was an artist who owned a copyright to a well-known illustration depicting a cartoon map of the world with a view of New York City skyline prominently in the foreground. The plaintiff brought suit against certain defendants involved in the publication of a poster used to promote a movie titled "Moscow on the Hudson." The poster included a depiction of a conceptually similar map, although many of the details differed, including a prominent rendering of the city of Moscow on the horizon. The plaintiff moved for summary judgment and the defendants countered by claiming their use was a parody. The Court squarely rejected the parody defense and offered the following rationale for so doing:

11

> In analyzing the commercial or noncommercial nature of the "Moscow" poster, it is useful to distinguish between two conceptually different situations: advertising material that promotes a parody of a copyrighted work, and advertising material that itself infringes a copyright. In the first case, the fact that the advertisement uses elements of the copyrighted work does not necessarily mean that it infringes the copyright, *if the product that it advertises constitutes a fair use of the copyrighted work.* See, e.g., Warner Bros., Inc. v. American Broadcasting Cos., 720 F.2d 231, 242-44 (2d Cir. 1983) (promotional broadcasts for television series legally parodying the Superman comic strip character did not infringe copyright in Superman character). In the second case, the work being advertised bears no relationship to the copyrighted work, but the advertisement itself infringes the copyright. In such a case, the owners of the copyright can prevent the advertisement from being used.
>
> This situation fits the second case. Neither the "Moscow" movie nor the poster was designed to be a parody of the Steinberg illustration. **The poster merely borrowed numerous elements from Steinberg to create an appealing advertisement to promote an unrelated commercial product**, the movie. No parody of the illustration is involved, and defendants are not entitled to the protection of the parody branch of the fair use doctrine.

Id. at 714-15. (emphasis added).

In the present case, the product Mars is promoting—its candy—is not itself a parody. As indicated by the italicized phrase in the above quotation, an advertisement can only qualify as a valid parody "if the *product* that it advertises constitutes a fair use." Just as the "Moscow" *movie* was not claimed to be a fair use of the protected illustration, Mars' *M&Ms* are not claimed to be (nor could they conceivably be) a fair use of The Naked Cowboy's trademark rights. What Mars has done is precisely what the Steinberg Court disapproved of—the "borrow[ing of] numerous elements" of The Naked Cowboy's trademarked celebrity persona "to create an appealing advertisement to promote an unrelated commercial product." Id.

The case Mars has relied upon in its letter-brief submitted in opposition to this motion is Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410

12

(S.D.N.Y. 2002). This decision actually reinforces the distinction spelled out in the cases discussed above. The plaintiff was a well-known clothing designer which also sold high-end fragrances. The plaintiff brought suit against a perfumery for advertising a comical dog perfume called "Tommy Holedigger." The Court entered summary judgment in the defendant's favor on the ground that the pet perfume product, together with the advertisements for same, was not likely to cause consumer confusion. Id. at 416. The Court's holding recognized that the dog perfume itself—an obvious "novelty item"—qualified as the fair use of the Tommy Holedigger trademark. Id. at 416-21. The advertisements for the satirical fragrance were, under Steinberg, likewise protected as promotional material for underlying parodic product. Id.; *see also* Steinberg, 663 F. Supp. at 714 (an advertisement qualifies as a parody only where "the product that it advertises constitutes a fair use of the copyrighted work"). In the present case, Mars' M&Ms, quite unlike a bottle of dog perfume, are not a satirical product. The infringing M&M ads, therefore, do not warrant invocation of the parody doctrine. Mars' reliance on Tommy Hilfiger rests upon a crude obliteration of the long-settled distinction between advertisements which promote a parodic product, and those which promote a defendant's ordinary—and wholly unironic—wares.[3]

---

[3] It should be noted that the Court in Tommy Hilfiger did not actually dismiss the case pursuant to the parody "defense." In fact, the Court observed that "because the mark is being used at least in part to promote a somewhat non-expressive, commercial product, the *First Amendment* does not extend to such use." Id. at 415-16. The Court went on to explain that "[n]evertheless, even without recourse to the *First Amendment*," the defendant was entitled to summary judgment because of a lack of evidence of consumer confusion regarding the source of the pet perfume. This view, although it represents a departure from the framework employed in other cases, actually provides a separate basis to strike the *First Amendment*-premised parody and fair defense defenses.

### 3. The Parody Defense Has Never Been Successfully Asserted Against a New York Statutory Right of Publicity Claim

Mars will undoubtedly endeavor to point out case law recognizing parody as a valid defense in a commercial context. Further, Mars has already indicated its intent to move for a dismissal of both the trademark claim and the right of publicity claim on the strength of its parody defense. In view of this prospective motion and in order to substantiate the present request to strike the parody defense as to both counts, it should be noted that there appears to be no precedent in which the doctrine of parody was a viable defense to a right of publicity claim under N.Y. Civ. Rights § 51. This no doubt reflects a recognition that there is no *First Amendment* right to appropriate a celebrity persona, even in an arguably humorous manner, for the purpose of selling an unrelated product. In Allen v. National Video, Inc., 610 F. Supp. 612, 622 (S.D.N.Y. 1985), the Court observed:

> The use in an advertisement of a drawing, which has no other purpose than to represent its subject, must give rise to a cause of action under the Civil Rights Law, because it raises the obvious implication that its subject has endorsed or is otherwise involved with the product being advertised. There is no question that this amounts to an appropriation of another's likeness for commercial advantage.

This view of the New York right of publicity is consistent with the sharply limited *First Amendment* protection afforded to commercial uses in general, not to mention the utter absence of *First Amendment* protection in the context of advertising a non-expressive consumer product (as even Tommy Hilfiger recognized).

14

### C. The Court Should Also Strike the Separately Pled Fair Use and First Amendment Defenses

The foregoing discussion focused on the affirmative defense of parody. As stated in Campbell, 510 U.S. at 579, "parody, like other comment or criticism, may claim fair use... ." Parody is, in other words, a kind of fair use, and in this case it appears to be only kind of fair use asserted by Mars. In view of the pleadings (and, once again, assuming Mars' reluctance to concede the mimicry does not nullify its claim to fair use), there is no other conceivable basis for the fair use affirmative defense other than parody. Thus, should the Court decide to strike the parody defense, The Naked Cowboy respectfully requests that the separately pled fair use defense be stricken in tandem.[4]

### IV. CONCLUSION

Mars's advertisements do not qualify as parody as a matter of law. The parody defense, whose purpose is to foster social commentary, criticism, and creative expression for its own sake, does not protect a purveyor of ordinary consumer goods who chooses to appropriate the good will of a celebrity persona to boost its sales. If Mars had dressed its M&Ms up in Yankees pinstripes bearing the number "2," can it really be the case that Derek Jeter would just have to accept the fact that he is now an unwitting endorser of candy?

Mars' appropriation of The Naked Cowboy's hard-earned celebrity status is nothing more than rank commercial exploitation. It is not parody and it is not fair use.

---

[4] For the same reason, and in the interest of judicial economy, the Court may consider striking the separately pled *First Amendment* defense, although same was not referenced in The Naked Cowboy's pre-motion correspondence.

Respectfully submitted,

HALBERSTADT CURLEY LLC

By: /s/ Scott M. Rothman
Scott M. Rothman
1100 E. Hector Street, Suite 425
Conshohocken, PA 19428
610 834 8819 (ph)
610 834 8813 (fx)
srothman@halcur.com
*Attorney for Plaintiff*

Date: 4/25/08

*Of Counsel to Plaintiff*:

KEVIN T. MULHEARN, P.C.
Kevin T. Mulhearn
60 Dutch Hill Rd. # 8
Orangeburg, NY 10962
(845) 398-0361 (ph)
(845) 398-3836 (fx)
kmulhearn@ktmlaw.net

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BURCK t/a THE NAKED COWBOY,<br>              Plaintiff,<br>       v.<br><br>MARS, INCORPORATED and CHUTE GERDEMAN, INC.<br>              Defendants. | NO. 08-1330<br><br>Judge Denny Chin |

**O R D E R**

AND NOW, this _____ day of _____, 2008, upon consideration of the Plaintiff's Motion pursuant to Fed.R.Civ.P. 12(f) to Strike Defendant Mars, Incorporated's Parody and Fair Use Affirmative Defenses (the *Eighth* and *Tenth* Affirmative Defenses pled by Mars), it is hereby ORDERED that the Motion is GRANTED and that said defenses are hereby STRICKEN.

It is further ORDERED that the *Ninth* Affirmative Defense, premised upon the *First Amendment*, is also STRICKEN.

                                                            BY THE COURT:

                                                            _____
                                                            Hon. Denny Chin, U.S.D.J.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BURCK t/a THE NAKED COWBOY,<br><br>     Plaintiff,<br><br> v.<br><br>MARS, INCORPORATED and CHUTE GERDEMAN, INC.<br><br>     Defendants. | NO. 08-1330<br><br>Judge Denny Chin |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of Motion and supporting Brief were served via electronic mail on the following:

Joseph R. Price, Esquire
Arent Fox LLP
1050 Connecticut Avenue, NW
Washington, DC 20036-53

HALBERSTADT CURLEY LLC

By: _/s/ Scott M. Rothman_
  Scott M. Rothman

Date: 4/25/08