**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ROBERT BURCK d/b/a THE NAKED COWBOY,** | |
| **Plaintiff,** | |
| **v.** | **C.A. No. 08 Civ. 1330-DC** |
| | **Filed Electronically** |
| **MARS, INCORPORATED** | |
| **and** | |
| **CHUTE GERDEMAN, INC.,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**CHUTE GERDEMAN, INC.'S MOTION TO DISMISS**

**and**

**DEFENDANT MARS, INCORPORATED'S**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

TABLE OF CONTENTS

Page

BURCK'S FACTUAL ALLEGATIONS ........................................................................ 3

ARGUMENT ............................................................................................................. 4

    A.    Standard of Review ...................................................................................... 4

    B.    Burck Has Failed to State a Claim for Relief Under Section 51 of the New
        York Civil Rights Law .................................................................................. 5

    C.    Burck Has Failed to State a Claim for Relief For False Endorsement
        Under Section 43 of the Lanham Act. ....................................................... 10

        1.    Strength of the Plaintiff's Mark .................................................... 11

        2.    Similarity of the Marks ................................................................. 13

        3.    Proximity of the Products ............................................................. 17

        4.    Likelihood of Bridging the Gap .................................................... 17

        5.    Actual Confusion .......................................................................... 18

        6.    Defendants' Bad Faith .................................................................. 18

        7.    Quality of Defendants' Product .................................................... 19

        8.    Sophistication of Consumers ........................................................ 19

CONCLUSION ....................................................................................................... 20

Defendants Chute Gerdeman, Inc. ("Chute") and Mars, Incorporated ("Mars") (collectively, "Defendants"), by and through counsel, hereby submit this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on behalf of Chute and motion for judgment on the pleadings[1] pursuant to Federal Rule of Civil Procedure Rule 12(c) on behalf of Mars ("Motion").  Because Burck's Complaint ("Complaint") fails to state a claim upon which relief may be granted, Defendants' Motion should be granted.

Burck's Complaint asserts two causes of action: (1) violation of Burck's right of publicity under section 51 of the New York Civil Rights Law; and (2) false endorsement under section 43 of the Lanham Act, 15 U.S.C. § 1125(a).  Burck contends that his rights under section 51 and the Lanham Act were violated by Defendants displaying in a mural and a video at Mars's Times Square M&M'S WORLD store two images of Mars's famous M&M'S Characters "dressed up exactly like" Burck's public persona, "The Naked Cowboy—white underwear, white cowboy hat, white cowboy boots, and white guitar included."  As fully set forth below, these allegations fail to state a claim under either section 51 or the Lanham Act.

Burck's right of publicity claim fails because he does not allege that Defendants have used his image, "portrait or picture," which is all that section 51 prohibits.  Accepting Burck's allegations as true—that Mars dressed up its M&M'S Characters in the same attire worn by Burck—this does not amount to use of Burck's "portrait or picture" for purposes of section 51.  Courts have narrowly construed the "portrait or picture" language of section 51, holding that a defendant's use is actionable only if consumers are likely to think that the image is *actually a portrait or picture of the plaintiff himself*.  Within those guidelines, courts have stated that it is permissible for a defendant to use clothing and props that are *suggestive* of the plaintiff's public

---

[1]  Mars filed its Answer in this matter on March 17, 2008.

persona.  Here, by dressing the famous M&M'S Characters in cowboy attire, Defendants have, at most, *suggested* aspects of Burck's public persona.  However, no consumer would mistake the disputed images—animated characters with the facial and physical attributes of the famous M&M'S Characters—for a portrait or picture of Burck himself.  Because Burck has failed to allege use of his "portrait or picture," he has failed to state a claim under section 51.

Burck's Lanham Act-false endorsement claim also fails because Burck has not alleged facts, which if proven, could support the reasonable finding that Defendants' M&M'S Characters attired in cowboy paraphernalia are anything other than parodies.  As this Court has previously observed, "'parody is not really a separate 'defense' as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to source, sponsorship or approval.'"[2]  Here, on the facts alleged, there is simply no basis to find that the M&M'S Characters allegedly attired as the Naked Cowboy would be confused by consumers as having been produced, sponsored or approved by Burck.

This is particularly true in light of the fact that neither of the M&M'S "Cowboy" Characters is depicted alone.  Rather, both are part of parodies of the New York City "experience."  For example, in both the mural and video other M&M'S Characters are depicted in familiar New York scenes and experiences, e.g., one M&M'S Character is seen climbing the Empire State Building like King Kong; another is dressed like the Statue of Liberty standing in the harbor; another attempts to get in a taxi cab but is bumped out of the way by an M&M'S Character who then jumps in the cab; and in yet another scene an M&M'S Character takes a ride

---

[2]  *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 416 (S.D.N.Y. 2002) (citation omitted) (granting summary judgment for defendant and finding permissible parody where defendant's "Timmy Holedigger" pet perfume constituted an "*adaptation* of Hilfiger's famous mark [which] likely allows consumers both immediately to recognize the target of the joke and to appreciate the obvious changes to the marks that constitute the joke").

in a horse-drawn carriage through Central Park.  Both the mural and video are parodies of the New York City experience and each of the M&M'S Characters, including the M&M'S "Cowboy" Character, considered in this context, are unequivocally parodies of iconic New York City experiences and are clearly viewed by consumers as such.[3]

Because the facts as alleged cannot support a reasonable finding that consumers would be confused regarding the source, sponsorship or approval of the images, Burck's Lanham Act-false endorsement claim also fails.  Consequently, Burck has failed to state a claim for relief under either section 51 or the Lanham Act and Defendants' Motion therefore should be granted.

## BURCK'S FACTUAL ALLEGATIONS

Burck alleges that over the past decade, he has "performed as a street entertainer in New York City's Times Square under the persona known as the Naked Cowboy."  (Compl. ¶ 5.) Burck alleges that he "has performed live for hundreds of thousands of people in his trademarked get-up, which features a white cowboy hat, white cowboy boots, white underpants, and an acoustic guitar."  (*Id.* ¶ 6.)  According to Burck's Complaint, his "name and likeness are registered trademarks" and as a result of his appearances in a variety of television programs, movies and music videos, Burck is a "prominent and well-known persona."  (*Id.* ¶¶ 10-17, 20-21.)

Burck contends that Defendants have violated his rights because "[s]ince April 2007, on two oversize video billboards situated in the heart of Times Square, Mars has been running an animated cartoon advertisement featuring a blue 'M&M' dressed up exactly like The Naked

---

[3]  *See Spring Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1130 (2d Cir. 1982) (quoting *McGregor-Coniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1133 (2d Cir. 1979) ("[A]n inquiry into the degree of similarity between two marks does not end with a comparison of the marks themselves …. 'the setting in which a designation is used affects its appearance and colors the impression conveyed by it.'").

Cowboy—white underwear, white cowboy hat, white cowboy boots, and white guitar included."
(Compl. ¶ 26.)  Burck asserts that this usage is "unmistakably a reference to, and incorporation
of, The Naked Cowboy's trademarked likeness."  (*Id*. ¶ 27.)  In addition, Burck asserts that
"[t]here is also a pictorial version of the 'Naked Cowboy' M&M … [which] depicts the yellow
M&M posing in the same trademarked get-up" used by Burck.  (*Id*. ¶ 30.)  The two M&M'S
Character images with which Burck takes issue are hereinafter referred to as the "M&M'S
Cowboy Characters."

Burck alleges that "Chute Gerdeman is the agency which created both the video ad and
the pictorial ad featuring the 'Naked Cowboy' M&M, and sold same to Defendant Mars for
profit . . . ."  (*Id*. ¶¶ 32-33.)  Burck therefore asserts that Defendants are liable for false
endorsement under Lanham Act Section 43(a) and for violating his right of publicity under
section 51 of the New York Civil Rights Law.

## <u>ARGUMENT</u>

### A.    *Standard of Review*

A Rule 12(b)(6) motion "is designed to test the legal sufficiency of the complaint."  *De
Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996).  In deciding the motion, the Court
"must accept as true [the] well-pleaded factual allegations in the Complaint and view them in the
light most favorable to [the] Plaintiff[]."  *Id*.  However, "[b]ald contentions, unsupported
characterizations, and legal conclusions are not well-pleaded allegations and will not defeat" a
motion to dismiss.  *Telenor East Invest AS v. Altimo Holdings & Invs. Ltd.*, No. 07 Civ.
4829(DC), 2008 WL 782733, at *6 (S.D.N.Y. Mar. 25, 2008) (Chin, J.) (citations and internal
quotation marks omitted); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763,

771 (2d Cir. 1994) ("conclusions of law or unwarranted deductions of fact are not admitted") (citation omitted)

The same standard applies to a motion for judgment on the pleadings pursuant to Rule 12(c). *See D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 99 (2d Cir. 2001) (A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ.P. 12(b)(6).). In reviewing a Rule 12(b)(6) or Rule 12(c) motion, the "court may consider the pleadings and attached exhibits, documents incorporated by reference, and matters subject to judicial notice." *Telenor East Invest AS*, 2008 WL 782733, at *6; *see also Life Prod. Clearing, LLC v. Angel*, 530 F. Supp. 2d 646, 652 (S.D.N.Y. 2008) (Chin, J.).

### B.    *Burck Has Failed to State a Claim for Relief Under Section 51 of the New York Civil Rights Law*

Section 51 of the New York Civil Rights Law provides a cause of action for injunctive relief and damages to "[a]ny person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without … written consent . . . ." N.Y Civil Rights Law § 51 (McKinney Supp. 2008). To state a claim under section 51, "a plaintiff must prove three elements: (1) defendants used his name, portrait, picture, or voice (2) for purposes of trade or advertising, (3) without his written consent." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 356 (S.D.N.Y. 1998) (Chin, J.).

Significantly, unlike some other jurisdictions, <u>New York does not recognize a common law cause of action for violation of the right of publicity</u>, and section 51 of the Civil Rights Law provides the sole vehicle for such claims. *See Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 621 (S.D.N.Y. 1985) (citing *Stephano v. News Group Publ'ns*, 474 N.E.2d 580, 584 (N.Y. 1984)).

Under section 51, a plaintiff must establish that the defendant used the plaintiff's "portrait or picture" without authorization. *Cerasani*, 991 F. Supp. at 356. A plaintiff's "portrait or picture" "is not restricted to photographs, but generally comprises those representations which are recognizable as likenesses of the complaining individual." *Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 726 (S.D.N.Y. 1978) (citation omitted). However, this Court has held that the provisions of section 51 "must be construed narrowly." *Cerasani*, 991 F. Supp. at 356. In this regard, "[m]erely suggesting certain characteristics of the plaintiff, without literally using his or her name, portrait, or picture, is not actionable under the statute." *Allen*, 610 F. Supp. at 621 (citing *Wojtowicz v. Delacorte Press*, 374 N.E.2d 129, 130 (N.Y.1978)).

This Court's discussion of the "portrait or picture" element of New York's right of publicity statute in *Allen v. National Video, Inc.*, is instructive. 610 F. Supp. 612, 621 (S.D.N.Y. 1985). In *Allen*, the plaintiff, film actor and director Woody Allen, sought to enjoin the defendant's use of a celebrity look-alike in an advertisement for a video rental store. Allen alleged that the defendant's physical resemblance to Allen, as well as his "pose, expression, and props," rendered the photograph of defendant a "portrait or picture" of Allen under New York law. *Id.* at 624. The court rejected this argument, explaining that defendant's use of a celebrity look-alike, as a matter of law, was not a "portrait or picture" of Allen, because no consumer would conclude that the photograph at issue was actually a photograph of Allen. *Id.* In reaching its decision, the court framed its analysis as follows:

> [T]he question before the court is not whether some, or even most, people will be *reminded* of plaintiff when they see this advertisement. ***In order to find that the photograph contains plaintiff's "portrait or picture," the court would have to conclude that most persons who could identify an actual photograph of plaintiff would be likely to think that this was actually his picture.*** This standard is necessary since we deal not with the question of whether an undisputed picture of plaintiff is recognizable to some, but whether an undisputed picture of defendant

> Boroff should be regarded, as a matter of law, to *be* a portrait or picture of plaintiff.

*Id.* (emphasis added). Under this framework, the *Allen* court observed that "there are several physical differences between plaintiff's face and that of defendant Boroff," including the defendant's "hair style and expression," which were "out of step with plaintiff's post-'Annie Hall' appearance." *Id.* Given those differences, the court concluded that although "the advertisement at bar clearly makes *reference* to plaintiff," the court could not conclude that the photograph was, as a matter of law, Allen's "portrait or picture." *Id.*

The *Allen* court compared its facts with those at issue in *Onassis v. Christian Dior-New York, Inc.*, 122 Misc. 2d 603 (S. Ct. N.Y. Co. 1983), another well known New York right of publicity case in which the plaintiff Jacqueline Kennedy Onassis won an injunction against a magazine advertisement featuring a model who was made up to look like she was *actually* Jacqueline Kennedy Onassis. In the *Allen* court's view, the *Onassis* decision was "consistent with the long-standing requirement under section 51 that the commercial use complained of amount to a 'portrait or picture' of an individual, not merely the suggestion of some aspect of a person's public persona." *Allen*, 610 F. Supp. at 623. Thus, "[w]hen, as in *Onassis*, the look-alike seems indistinguishable from the real person and the context of the advertisement clearly implies that he or she is the real celebrity, a court may hold as a matter of law that the look-alike's face is a 'portrait or picture' of plaintiff." *Id.*

Applying the same analysis, Burck's allegation that the M&M'S Characters, attired in the Naked Cowboy's "trademarked get-up," simply cannot give rise to a violation of section 51. No reasonable consumer, when viewing Defendants' famous[4] M&M'S Cowboy Characters dressed

---

[4] *See Hershey Foods Corp. v. Mars, Inc.*, 998 F. Supp. 500, 506 (M.D. Pa. 1998) (noting that the M&M'S "candy pieces are 'cultural icons' and [are] highly recognizable by the public. They

in Burck's alleged "trademark get-up" could conclude that those animated images were *actually a picture of Burck*, nor that the images were "indistinguishable" from Burck. Quite the opposite, the disputed images are readily recognizable as the world-famous M&M'S Characters with the facial features and physical attributes that consumers have come to associate with the famous M&M'S Characters. At most, Defendants have merely *suggested* certain characteristics of Burck's public persona by dressing the M&M'S Characters in Burck's alleged Naked Cowboy attire. Under *Allen* and *Onassis*, merely suggesting Burck's persona in this manner simply does not and cannot amount to use of his "portrait or picture."

In correspondence with the Court, Burck has suggested that his section 51 claim is based on the Ninth Circuit's decision in *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992). Burck's reliance on *White* is misplaced. In fact, that decision, which is arguably one of the most plaintiff-favorable right of publicity decisions to date, supports dismissal of Burck's section 51 claim. In *White*, celebrity game show hostess Vanna White sued Samsung for an ad featuring a robot dressed in a dress and blonde wig standing on what was plainly meant to be the "Wheel of Fortune" game show stage. In her complaint White alleged violation of California's right of publicity statute (Cal. Civil Code § 3344), which is substantively identical to New York's statute, as well as violation of California's common law right of publicity, and violation of her rights under the Lanham Act. The trial judge granted summary judgment against White on all three claims and she appealed.

---

serve to identify the M&M's brand candies to consumers"); *Masterfoods USA v. Arcor USA, Inc.*, 230 F. Supp. 2d 302, 310 (W.D.N.Y. 2002) ("Mars's M&M'S® mark is conceded by defendant to be famous and 'instantly recognizable'."); *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F. Supp. 571, 582 (D.N.J. 1985) ("'M&M'S' [is a] very strong mark[], easily categorized as arbitrary or fanciful").

*Affirming* the trial judge's grant of summary judgment against White on her statutory right of publicity claim, the Ninth Circuit held that the California statute protects a person's "photograph or likeness," and that "a robot with mechanical features, and not, for example, a manikin molded to White's precise features . . . was not White's 'likeness' within the meaning of section 3344." [5] *Id.* at 1397. The Ninth Circuit went on to hold that California's common law right of publicity was more expansive than California's statute, as it protected not only a person's photograph or likeness, but their "persona." *Id.* at 1398. As New York's section 51 is substantively identical to California's section 3344, and **because New York has no common law right of publicity**,[6] the *White* decision provides no support for Burck's claim and indeed, to the contrary, provides further authority warranting its dismissal.

Likewise, here, the facts as pled do not legally permit a finding that the blue or yellow M&M'S Character attired in "white underwear, white cowboy hat, white cowboy boots, and white guitar," (Compl. ¶¶ 26, 30), is the "portrait or picture" of Burck, anymore than a robot in a blonde wig and dress, even when clearly meant to represent Vanna White, could legally be held to be her "likeness." Indeed, even if a consumer were to conclude that the M&M'S Cowboy Characters bore a "suggestive resemblance" to Burck, no consumer would conclude that those characters were actually images of Burck himself. Consequently, Burck has failed to plead facts showing that Defendants used his "portrait or picture" as defined by section 51. Burck's

---

[5]  Similarly, in *Nurmi v. Peterson*, 10 U.S.P.Q.2d 1775 (C.D. Cal. 1989) the court dismissed a plaintiff's right of publicity claim under the California statute, where the defendant's character copied certain "props, clothes and mannerisms" associated with the plaintiff's character. *Id.* at 1778. In the *Nurmi* court's view, because "the word 'likeness' has been employed by the California Supreme Court to mean an exact copy of another's features and not merely a suggestive resemblance," the plaintiff could not prevail. *Id.* at 1777-78.

[6]  *Stephano v. News Group Publ'n*, 474 N.E.2d at 584 ("[T]he 'right of publicity' is encompassed under the Civil Rights Law as an aspect of the right of privacy, which ... is exclusively statutory in this State . . . .").

Complaint therefore fails to state a claim for violation of his right of publicity under section 51 and should be dismissed.

### C.     Burck Has Failed to State a Claim for Relief For False Endorsement Under Section 43 of the Lanham Act.

To properly plead a Lanham-Act false endorsement claim, Burck must allege facts, that if proved, would establish that the M&M'S Cowboy Characters were likely to mislead an appreciable number of consumers into believing that Burck sponsored, endorsed or otherwise approved of Mars's use of his "trademarked likeness."  *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 416 (S.D.N.Y. 2002).

In deciding whether consumer confusion is likely, a court applies the factors first enunciated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), namely:  (1) the strength of the plaintiff's trademark; (2) the degree of similarity between the parties' marks; (3) the proximity of the products; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) the existence of actual confusion; (6) the defendant's good faith; (7) the quality of the defendant's product; and (8) the sophistication of the consumers. *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 411 (S.D.N.Y. 2006).

In addition, in a case like this, where the Defendants have argued that their use is protected fair use in the form of parody, the court must also consider that in its analysis of the sufficiency of the Plaintiff's allegations.  It has long been established that a parody is "a simple form of entertainment conveyed by juxtaposing the irreverent representation of the trademark with the idealized image created by the mark's owner."  *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 415 (quoting *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 34 (1st Cir. 1987)).  To be deemed a permissible parody, rather than an infringement, "[a] parody must convey two simultaneous—and contradictory—messages:  that it is the original, but also that it is

*not* the original and is instead a parody." *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 886 F.2d 490, 494 (2d Cir. 1989). "To the extent that it does only the former but not the latter, it is not only a poor parody but also vulnerable under trademark law, since the customer will be confused." *Id.* In this regard, parody "is not really a separate 'defense' as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to source, sponsorship or approval." *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 416 (citation omitted).

Although the *Polaroid* factors "plainly involve factual inquiries, the application of these factors to the ultimate question of likelihood of confusion is a question of law." *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 416. Where the factors, assessed based on the facts as alleged, fall in the defendant's favor as a matter of law, dismissal or judgment on the pleadings is appropriate. *Accord id.* Here, analysis of the *Polaroid* factors invariably leads to the conclusion that the facts as alleged can only support a finding that the M&M'S Cowboy Characters would be viewed by consumers as parodies, and that consumers are not likely to be confused into believing that Burck has sponsored, approved or endorsed Defendants' use of his alleged "trademarked likeness."

### 1.    Strength of the Plaintiff's Mark

Burck's Complaint alleges that his trademark is strong. (*See, e.g.,* Compl. ¶ 9 (alleging that Burck's "trademarked likeness" is "the *sine qua non* of a surging career as the most famous busker in the entertainment capital of the world"); *id.* at ¶ 25 (Burck's likeness is "well-recognized").) In an ordinary trademark infringement case, the strength of a plaintiff's mark weighs in favor of the plaintiff. In cases of parody, however, the opposite is true. *See Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 416 (quoting 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:153 (4th ed. 2001) ("The strength and recognizability

of the [plaintiff's] mark may make it easier for the audience to realize that the use is a parody and a joke on the qualities embodied in the trademarked word or image."). Indeed, "it is precisely because of the mark's fame and popularity that confusion is avoided, and it is this lack of confusion that a parodist depends upon to achieve the parody." *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 416. Moreover, where the *defendant's* mark is also strong, the likelihood of confusion is even further reduced. *See Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 273 (S.D.N.Y. 1992) ("Where the plaintiff's mark is being used as part of a jest or commentary … [and] both plaintiff['s] and defendant's marks are strong, well recognized, and clearly associated in the consumers' mind with a particular distinct ethic … confusion is avoided ….").

In *Tommy Hilfiger Licensing, Inc.*, the Court denied Plaintiff Hilfiger's claim for trademark infringement, and found that the defendant's use of the name "Timmy Holedigger" for a brand of pet perfume was a permissible parody of Hilfiger's trademarks. 221 F. Supp.2d at 416. The Court reasoned that "Nature Labs' adaptation of Hilfiger's famous mark likely allows consumers both immediately to recognize the target of the joke and to appreciate the obvious changes to the marks that constitute the joke. A distinctive mark will not favor plaintiff in these circumstances." *Id*. at 416.

Accepting Burck's allegations as true, the same circumstances would exist here. The alleged strength and recognizability of Burck's "trademarked likeness" will allow consumers immediately to recognize the target of the parody—Burck—and to appreciate the obvious changes to the marks that constitute the parody: namely, the fact that the alleged Naked Cowboy's attire appears on an M&M'S Character, and not on Burck. Moreover, as in *Yankee Publishing*, the fact that Mars's marks—the M&M'S Characters—are widely recognized by

consumers, further alleviates the possibility of consumer confusion. *See Hershey Foods Corp. v. Mars, Inc.*, 998 F. Supp. 500, 506 (M.D. Pa. 1998) (noting that the M&M'S "candy pieces are 'cultural icons' and [are] highly recognizable by the public. They serve to identify the M&M's brand candies to consumers"); *Masterfoods USA v. Arcor USA, Inc.*, 230 F. Supp. 2d 302, 310 (W.D.N.Y. 2002) ("Mars's M&M'S® mark is conceded by defendant to be famous and 'instantly recognizable'"); *Eagle Snacks, Inc. v. Nabisco Brands, Inc.*, 625 F.Supp. 571, 582 (D.N.J. 1985) ("'M&M'S' [is a] very strong mark[], easily categorized as arbitrary or fanciful").

Consequently, this factor weighs in favor of Defendants.

### 2.    Similarity of the Marks

This factor considers the visual similarities between the parties' marks, as well as the context in which those marks are used. In cases of parody, "[i]t is necessary for the [defendant] to conjure up the [plaintiff's trademark] … for there to be a parody at all." *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 417. However, "a parody also relies on 'equally obvious dissimilarit[ies] between the marks' to produce its desired effect." *Id.* (quoting *Tetley, Inc. v. Topps Chewing Gum, Inc.*, 556 F. Supp. 785, 790 (E.D.N.Y. 1983); *see also Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987) ("A parody relies upon a difference from the original mark, presumably a humorous difference, in order to produce its desired effect"). In addition, the context in which the parody is displayed also may serve to prevent confusion. *See Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 417 (quoting *McCarthy* § 31:155 ("If the difference in wording or appearance of the designation together with the context and overall setting is such to convey to the ordinary viewer that this is a joke, not the real thing, then confusion as to source, sponsorship, affiliation, or connection is unlikely.").

Here, the marks at issue are Burck's alleged "trademarked likeness" (consisting of Burck dressed in a white cowboy hat, underpants, and boots while holding a guitar) and Defendants'

- 13 -

famous M&M'S Characters, which consist of the famous yellow and blue M&M'S Characters with the visible "M" on their M&M'S bodies, white gloves, mouths, large oval eyes, eyebrows, hands and feet,[7] attired in the alleged Naked Cowboy "trademarked get-up."  On the facts as alleged, Defendants' Characters are classic examples of parody.  The images conjure up just enough of Burck's trademark (specifically, the hat, boots, underpants and guitar) for consumers to recognize the target of the parody, while at the same time making "obvious changes to the marks that constitute the joke," namely, the depiction of the cowboy attire on the bodies of animated M&M'S Characters, rather than on Burck himself.  *See Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 416.

Numerous decisions have found parody, and not false endorsement, in similar circumstances.  For example, the court in *Eveready Battery Co. v. Adolph Coors, Inc.*, 765 F. Supp. 440, 450 (N.D. Ill. 1991), found parody, not false endorsement, where the defendant used actor Leslie Nielsen dressed in rabbit ears, tail and feet and banging a drum in a television commercial to parody the well-known "Energizer Bunny" trademark.  *Id.*  Given the insertion of Mr. Nielsen into the bunny attire associated with the plaintiff, the court held that no consumer confusion would occur because "the unmistakable *differences* between the Energizer Bunny and Leslie Nielsen in modified rabbit attire arguably generate much of the humor in the Coors parody."  *Id.*

---

[7]  While Burck's Complaint does not detail the characteristics of the M&M's Characters, the Court may take judicial notice of them as they are available on Mars's M&M'S website at http://us.mms.com/us/about/characters.  *See* Fed. R. Evid. 201; *Bridgeway Corp. v. Citibank*, 45 F. Supp. 2d 276, 278 n.2 (S.D.N.Y. 1999) (taking judicial notice of historical information on Liberia on the "Geocities" Web site).  *See also Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information regarding a bank's ownership from the bank's Web site).

Similarly, the court in *World Wrestling Fed'n v. Big Dog Holdings, Inc.*, 280 F. Supp. 2d 413, 434 (W.D. Pa. 2003) held that "dogified" images of professional wrestlers and related slogans used on defendant's t-shirts would be perceived by consumers as a parody of the wrestlers, not as implying endorsement by them. *Id.* The court emphasized that the significant differences between the plaintiff's marks and the "dogified" images used by defendant would clearly convey the parody. *See id.* ("[T]he most obvious difference is that WWE's images of THE ROCK are photographs of Dwayne Johnson, while Big Dog's 'Rock-weiler' graphic is a sketch of a dog caricatured as the WWE character … [thus,] it remains obvious that the Big Dog graphic is a dog, not THE ROCK"). Consequently, the *WWE* court explained, "the difference in wording and appearance of the phrases together with the use of dogs as wrestling characters conveys to the ordinary consumer that this is an obvious joke." *Id.* at 435; *see also Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 417 (granting summary judgment for the defendant, and finding permissible parody where defendant's "Timmy Holedigger" pet perfume was an "adaptation of Hilfiger's famous mark [which] likely will allow consumers both immediately to recognize the target of the joke and to appreciate the obvious changes to the marks that constitute the joke"); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 503-04 (2d Cir. 1996) (visual dissimilarities between defendant's "Spa'am" mark and plaintiff's SPAM mark, and the "parodic context in which the name 'Spa'am' appears will distinguish the marks in the consumer's mind").

The same is true here. Although the M&M'S Cowboy Characters evoke certain aspects of Burck's alleged trademark, the M&M'S Characters embody obvious changes to the mark that constitute a "joking variation on the original" alleged Naked Cowboy character. *See Tommy*

*Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 417.  These changes "reinforce the imitative, yet comedic scheme inherent in a humorous takeoff."  *Id.*

Moreover, the context in which the M&M'S Cowboy Characters are displayed further reinforces the comedic and parodic intent of the images, and alleviates any possibility of consumer confusion.  The M&M'S Cowboy Characters were displayed as part of mural depicting a number of the M&M'S Characters and as part of an animated video shown on video billboards near Times Square.  (Compl., at ¶¶ 26-30.)  As noted previously, both displayed the M&M'S Cowboy Characters not in isolation, but rather as part of a series of parodies of the "New York City experience."  For example, in both the mural and video, other M&M'S Characters are depicted in familiar New York scenes and experiences, e.g., one M&M'S Character is seen climbing the Empire State Building acting like King Kong; another is dressed like the Statue of Liberty standing in the harbor; yet another attempts to get in a taxi cab but is bumped out of the way by an M&M'S Character who then jumps in the cab; and in another scene an M&M'S Character takes a ride in a carriage through Central Park.

Both the mural and video are parodies of the New York City experience and each of the M&M'S Characters, including the M&M'S Cowboy Characters, considered in this context, are unequivocally parodies of iconic New York City scenes and experiences, and will clearly be viewed by consumers as such.  *See Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at 417-18 (defendant's presentation of its "Timmy Holedigger" pet perfume alongside "a variety of other parody pet colognes, such as CK-9 and Pucci … reinforces the message that the perfumes are a parody, and that they come from a single source rather than the multiple sources of the parodied marks"); *Hormel Foods Corp.,* 73 F.3d at 503 (given that defendant's parody was "another in a long line of Muppet lampoons" consumers were "likely to see the name 'Spa'am' as the joke it

was intended to be"). As such, the similarity of the marks factor should be weighed in favor of Defendants.

### 3.    Proximity of the Products

Burck has not alleged, nor could he, that the parties' products are similar. Indeed, the products offered under Mars and Burck's respective marks are wholly dissimilar. Burck offers "street performances" under his "trademarked likeness." (Compl. at ¶ 7.) Mars, on the other hand, offers chocolate candies under its M&M'S Characters trademarks. Because the parties' products are completely unrelated, this factor should be weighed in favor of Defendants. *See Eveready Battery Co.*, 765 F. Supp. at 450 (no likelihood of confusion where the parties' products "do not overlap in any significant manner").

### 4.    Likelihood of Bridging the Gap

This factor examines "the likelihood that the senior user will enter the junior user's market in the future, or that consumers will perceive the senior user as likely to do so." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 387 (2d Cir. 2005). Thus, in this case, the relevant inquiry is the likelihood that Burck will enter Mars's market and begin selling chocolate candies under his "trademarked likeness." Burck's Complaint contains no allegations that Burck intends to begin selling chocolate candies, and instead pleads only that Burck has used his "trademarked likeness" in connection with "street performances." (Compl. ¶ 7.) As such, this factor weighs in favor of Defendants. *See Hormel*, 73 F.3d at 504 (weighing the "likelihood of bridging the gap" factor in favor of defendant where "Hormel has shown no intention of entering the field of puppet entertainment … and there is no evidence that consumers would relate Hormel to such an enterprise").

5.    **Actual Confusion**

Burck's Complaint contains no allegations that Mars's use of the M&M'S Cowboy

Characters has caused any actual confusion among consumers.  Although evidence of actual

confusion is not required in order for a plaintiff to prevail, "[i]f consumers have been exposed to

two allegedly similar trademarks in the marketplace for an adequate period of time and no actual

confusion is detected … that can be [a] powerful indication that the junior trademark does not

cause a meaningful likelihood of confusion."  *Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d at

419 (citations and internal quotation marks omitted).  Burck alleges that Mars has displayed the

M&M'S Cowboy Characters "[s]ince April 2007 … on two oversized video billboards situated

in the heart of Times Square."  (Compl. ¶ 26.)  Despite the alleged duration and prominence of

Mars's display of the disputed images, Burck does not allege that they have caused any actual

consumer confusion.  Consequently, this factor also weighs in favor of Defendants.

6.    **Defendants' Bad Faith**

The bad faith factor evaluates whether the defendant acted with "an intent to capitalize on

consumer deception or hitch a free ride on plaintiff's good will."  *Tommy Hilfiger Licensing,*

*Inc.*, 221 F. Supp. 2d at 419.  However, "an intent to parody is not an intent to confuse the

public."  *Jordache Enters., Inc.*, 828 F.2d at 1486.  In this regard, a parodist's "intent is not … to

confuse the public but rather to amuse."  *Id*.; *see also Tommy Hilfiger Licensing, Inc.*, 221 F.

Supp. 2d at 419-20 (quoting *Anheuser-Busch, Inc. v. L&L Wings, Inc.*, 962 F.2d 316, 321-22 (4th

Cir. 1992)) ("The commercial success of a parodist's product is attributable to consumers who

purchased because 'they were amused by the cleverness of [the] design,' and not because they

believed it to be the original.").  Here, Defendants' intent in adapting Burck's "trademarked

likeness" was to create a parody, not to cause consumer confusion.  Consequently, this factor

also weighs in favor of Defendants.  Incidentally, it is arguably the case that if anyone benefited

- 18 -

from Defendants' parody of the Naked Cowboy's "trademarked get-up" on the famous M&M'S

Characters on large video billboards "in the entertainment capital of the world," (Compl. ¶ 25), it

was Burck, not Defendants.

### 7.     Quality of Defendants' Product

 Where a defendant's product is inferior or equal in quality to the plaintiff's products, this

factor weighs in favor of the plaintiff.  *See Hormel Foods*, 73 F.3d at 505 ("[A]n inferior product

may cause injury to the . . . trademark owner because people may think that the senior and junior

products came from the same source … or … products of equal quality may tend to create

confusion as to source because of this very similarity.").  Burck's Complaint contains no

allegations as to the quality of Mars's or Burck's goods and services.  Therefore, this factor

weighs in favor of Defendants.  *See Funrise Canada (HK) Ltd. v. Zauder Bros., Inc.*, No. 99-CV-

1519 (ARR), 1999 WL 1021810, at *24 (E.D.N.Y. July 2, 1999) (weighing this factor in

defendants' favor where plaintiff provided "no evidence or argument that defendants' products

are of inferior quality").

### 8.     Sophistication of Consumers

The final factor to be considered is the sophistication of the consumers and the degree of

care likely to be exercised in purchasing the parties' products.  As a general rule, "[t]he more

sophisticated the consumers, the less likely they are to be misled by similarity in marks."  *Katz v.

Modiri*, 283 F. Supp. 2d 883, 898 (S.D.N.Y. 2003).   Burck's Complaint does not contain any

allegations regarding the sophistication of the parties' consumers, nor the level of care likely to

be exercised by consumers when making purchasing decisions.  This factor, therefore, should be

weighed in favor of Mars.  *See Lemme v. Nat'l Broad. Co.*, 472 F. Supp.2d 433, 451 (E.D.N.Y.

2007).

Consequently, because each of the *Polaroid* factors, analyzed based on the facts alleged by Burck weighs in favor of Defendants, Burck's Complaint fails to state a claim upon which relief may be granted for false endorsement under section 43 of the Lanham Act and dismissal and judgment on the pleadings is proper.

## CONCLUSION

For the foregoing reasons, Burck has failed to state a claim upon which relief may be granted for: (1) violation of his right of publicity under section 51 of the New York Civil Rights Law; or (2) false endorsement under section 43 of the Lanham Act.  Consequently, the Court should grant Defendant Chute's motion to dismiss pursuant to Rule 12(b)(6), and Defendant Mars's motion for judgment on the pleadings pursuant to Rule 12(c).


Dated: April 25, 2008                    Respectfully submitted,

                                         **ARENT FOX LLP**


                                         _____/s_____
                                         Leslie K. Mitchell, N.Y. Bar No. LM2811
                                         Joseph R. Price (*admitted pro hac* vice)
                                         Ross Q. Panko
                                         **ARENT FOX LLP**
                                         1675 Broadway
                                         New York, New York 10019
                                         Telephone: (212) 484-3900
                                         Facsimile: (212) 484-3990
                                         Price.joseph@arentfox.com
                                         *Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of Defendant Chute Gerdeman, Inc.'s Memorandum In Support of Motion to Dismiss and Defendant Mars, Incorporated's Motion for Judgment on the Pleadings was served this 25th day of April, 2008 via first-class mail, postage prepaid upon:

>Kevin T. Mulhearn, P.C.
>60 Dutch Hill Road, Suite 8
>Orangeburg, NY 10962

>Scott M. Rothman, Esq.
>Halberstadt Curley LLC
>100 E. Hector Street
>Suite 425
>Conshohocken, PA  19428

By: _____s/_____
>Joeseph R. Price
>Arent Fox LLP
>1050 Connecticut Avenue, N.W.
>Washington, DC  20036
>(P) (202) 857-6000
>(F) (202) 857-6395
>Price.joseph@arentfox.com