UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

ROBERT BURCK d/b/a THE NAKED       :
COWBOY,
                                    :

            Plaintiff,
                                    :

       - against -
                                    :
MARS, INCORPORATED and CHUTE
GERDEMAN, INC.,                     :

            Defendants.    :

- - - - - - - - - - - - - - - - - -x

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** ____20_____
**DATE FILED:** __6/23/08_____

**<u>OPINION</u>**

08 Civ. 1330 (DC)

**CHIN, District Judge**

        This is the case of The Naked Cowboy versus The Blue
M&M.

 

        Plaintiff Robert Burck is a "street entertainer" who
performs in New York City's Times Square as The Naked Cowboy,
wearing only a white cowboy hat, cowboy boots, and underpants,

and carrying a guitar strategically placed to give the illusion
of nudity.  He has registered trademarks to "The Naked Cowboy"
name and likeness.

Beginning in April 2007, defendants Mars, Incorporated
("Mars") and Chute Gerdeman, Inc. ("Chute") began running an
animated cartoon advertisement on two oversized video billboards
in Times Square, featuring a blue M&M dressed "exactly like The
Naked Cowboy," wearing only a white cowboy hat, cowboy boots, and
underpants, and carrying a guitar.

In this case, Burck sues defendants for compensatory
and punitive damages.  He alleges that defendants have violated
his "right to publicity" under New York law and infringed his
trademarks under federal law by using his likeness, persona, and
image for commercial purposes without his written permission and
by falsely suggesting that he has endorsed M&M candy.

Three motions are before the Court:  Chute moves
pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint;
Mars moves pursuant to Fed. R. Civ. P. 12(c) for judgment on the
pleadings; and Burck moves pursuant to Fed. R. Civ. P. 12(f) to
strike certain of defendants' affirmative defenses.

For the reasons that follow, Burck's motion is denied
and defendants' motions are denied in part and granted in part.
Burck's right to privacy claim (denominated as a right of
publicity claim) is dismissed, for the New York statute protects
the name, portrait, or picture of a "living person," not a
character created or a role performed by a living person.  Burck

may proceed, however, with his false endorsement claim, for he plausibly alleges that consumers seeing defendants' advertisements would conclude -- incorrectly -- that he had endorsed M&M candy.

<div align="center">**BACKGROUND**</div>

A.     **The Facts**

As alleged in the complaint and set forth in the exhibits incorporated therein by reference, the facts are as follows:

For the past ten years, Burck "has performed as a street entertainer in New York City's Times Square under the persona known as The Naked Cowboy," wearing only "a white cowboy hat, white cowboy boots, white underpants, and an acoustic guitar." (Compl. ¶¶ 5, 6).  His street performances "have become a fixture of New York City culture, as well as one of the top tourist attractions" in Times Square.  (Id. ¶ 7).

The Naked Cowboy has become "a prominent and well-known persona," and Burck has registered trademarks to The Naked Cowboy name and likeness.  (Id. ¶¶ 20, 21).  In addition to performing in Times Square, Burck has appeared as The Naked Cowboy in various television shows, movies, and video games.  (Id. ¶¶ 10-19).  He has also licensed his name and likeness to companies for endorsements and advertisements.  (Id. ¶ 22).  For instance, he appeared in a Chevrolet commercial that debuted during Super Bowl XLI.  (Id. ¶ 23).

Mars sells candies and chocolate products, including the world-famous M&M's.  (Id. ¶ 33).  Mars retained Chute, an

<div align="center">-3-</div>

advertising and design agency, to create a video for two
electronic billboards in Times Square and a mural for its M&M
World store located in Times Square.  (Id. ¶¶ 32, 33).

        The video (an animated cartoon) featured "a blue 'M&M'
dressed up exactly like The Naked Cowboy -- white underwear,
white cowboy hat, white cowboy boots, and white guitar."  (Id. ¶
26; see DX C).[1]  In addition to the M&M Cowboy character, the
video showed other M&Ms as famous New York figures, such as the
Statue of Liberty and King Kong, as well as everyday New Yorkers
and tourists engaging in typical New York activities such as
hailing a cab and riding a carriage through Central Park.
Beginning in April 2007 (Compl. ¶ 29), the video "played on a
continuous loop every few minutes over a nine-month period" (Tr.
at 22).

        The mural inside the M&M World store was a snapshot of
the heart of Times Square, transformed into an animated world
populated by M&M characters.  (Compl. ¶ 30; see DX B1).  Neon
lights, oversized billboards advertising Broadway shows, and
familiar landmarks, such as the Cup Noodles sign, filled the
scene.  Many of the signs and billboards in the mural were
altered to incorporate the M&M logo or candy themes, such as
replacing "STOMP" (the name of a show) with the word "CHOMP" and
substituting a red M&M in place of the red heart in the logo

---

        [1]    References to "DX" are to defendants' exhibits
submitted at the oral argument on June 11, 2008.  These exhibits
are referred to in the complaint and are deemed incorporated
therein by reference.  (See Transcript of Proceedings of June 11,
2008 ("Tr.") at 4).

-4-

"I ♥ NY."  In the middle of the mural, in the midst of a cluster of billboards, was a small billboard featuring a yellow M&M wearing The Naked Cowboy's signature costume.  (DX B1).

Defendants did not request, nor did they receive, permission from Burck to use a likeness of The Naked Cowboy for the M&M Cowboy characters.  (Compl. ¶ 25).

**B.    Procedural History**

Burck commenced this action on February 11, 2008, asserting two causes of action:  trademark infringement under section 1125(a) of the Lanham Act, 15 U.S.C. § 1125(a), and violation of section 51 of the N.Y. Civil Rights Law, N.Y. Civ. Rights Law § 51 (McKinney Supp. 2008).  Mars answered on March 17, 2008, asserting twelve affirmative defenses, including fair use, the First Amendment, and parody (the eighth, ninth, and tenth affirmative defenses, respectively).

These motions followed.  I heard argument on June 11, 2008 and reserved decision.

**DISCUSSION**

I start with defendants' motions, addressing first Burck's right of privacy claim under New York law and second his trademark infringement claim under the Lanham Act.  I then turn to Burck's motion to strike certain affirmative defenses.

**A.    Defendants' Motions**

**1.    Motion to Dismiss Standards**

Motions pursuant to Rule 12(c) for judgment on the pleadings are governed by the same standards applicable to Rule

12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted.  Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006).  On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in his favor.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996); see Erickson v. Pardus, 127 S. Ct. 2197, 2199 (2007) (per curiam); Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

In its recent decision in Bell Atlantic Corp., the Supreme Court announced the "retirement" of the oft-quoted "no set of facts" language from Conley v. Gibson, 355 U.S. 41, 45-47 (1957), adopting in its place a "plausibility" standard.  Bell Atl. Corp., 127 S. Ct. at 1969.  As interpreted by the Second Circuit, Bell Atlantic Corp. did not announce a "universal standard of heightened fact pleading, but . . . instead requir[es] a flexible 'plausibility standard,' which obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  The question is whether the pleading alleges "'enough facts to state a claim for relief that is plausible on its face.'"  Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell Atl. Corp., 127 S. Ct. at 1974).

2.    **The Right of Privacy Claim**

a.    **The Statute**

The right to privacy has been recognized by statute in New York for more than a century.  See Groden v. Random House,

-6-

<u>Inc.</u>, 61 F.3d 1045, 1048 (2d Cir. 1995).  The New York
legislature enacted sections 50 and 51 of the Civil Rights Law to
protect against "nonconsensual commercial appropriations of the
name, portrait or picture of a living person."  <u>Finger v. Omni
Publ'ns. Int'l, Ltd.</u>, 77 N.Y.2d 138, 141 (1990); <u>see also
Arrington v. New York Times Co.</u>, 55 N.Y.2d 433, 439 (1982).
There is no common law right to privacy or publicity in New York,
and thus sections 50 and 51 provide the only remedy for such
claims.  <u>Groden</u>, 61 F.3d at 1049.

        Section 50 of the New York Civil Rights Law makes it a
misdemeanor to use "for advertising purposes, or for the purposes
of trade, the name, portrait or picture of any living person
without having first obtained the written consent of such
person."  N.Y. Civ. Rights Law § 50 (McKinney 1992).  Section 51
creates a cause of action for the invasion of the "right of
privacy" granted by section 50.  <u>See</u> <u>Zacchini v. Scripps-Howard
Broad. Co.</u>, 433 U.S. 562, 571 n.6 (1977).  Section 51 provides:

> Any person whose name, portrait, picture or
> voice is used within this state for
> advertising purposes or for the purposes of
> trade without the written consent first
> obtained as above provided [in section 50]
> may maintain an equitable action . . . to
> prevent and restrain the use thereof; and may
> also sue and recover damages for any injuries
> sustained by reason of such use.

N.Y. Civ. Rights Law § 51 (McKinney Supp. 2008).  To maintain a
civil action under section 51, a plaintiff must show that the
defendant (1) used his name, portrait, picture, or voice, (2) for
advertising or trade purposes, (3) without his written consent.

Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 621 (S.D.N.Y. 1985).

Sections 50 and 51 are limited in their reach because of the First Amendment. They do not apply, for example, to "reports of newsworthy events or matters of public interest." Messenger v. Gruner + Jahr Printing & Publ'g, 94 N.Y.2d 436, 441 (2000). Likewise, they do not apply to works of art. Hoepker v. Kruger, 200 F. Supp. 2d 340, 349 (S.D.N.Y. 2002). For example, the use of a town justice's picture without his permission was held not to violate section 50 where it was used as part of a painting that was a caricature and parody. Altbach v. Kulon, 302 A.D.2d 655, 657 (3d Dep't 2003). Similarly, "entertainment broadcasts" that involve, for example, humor and comedy are forms of expression that may also be protected by the First Amendment, although not categorically. See Geary v. Goldstein, 831 F. Supp. 269, 273 (S.D.N.Y. 1993) (quoting Frank v. Nat'l Broad. Co., 119 A.D.2d 252, 257 (2d Dep't 1986)).

Over the years there has been much litigation over what constitutes a person's "portrait" or "picture" for purposes of sections 50 and 51. It is settled that "any recognizable likeness, not just an actual photograph, may qualify as a 'portrait or picture.'" Allen, 610 F. Supp. at 622 (citing Ali v. Playgirl, Inc., 447 F. Supp. 723, 726 (S.D.N.Y. 1978)). Ali involved a composite photograph and drawing of a naked African-American man in a boxing ring, with facial features recognizable as those of Muhammad Ali. 447 F. Supp. at 726. The court held

that this was a portrait or picture of the former world
heavyweight boxing champion.  Id.  Similarly, in Young v.
Greneker Studios, Inc., 175 Misc. 1027 (N.Y. Sup. Ct. 1941), the
court held that a manikin that was modeled on the plaintiff was a
portrait or picture of her.  Id. at 1027-28.  The court explained
that "[t]he words 'picture' and 'portrait' are broad enough to
include any representation [of a living person], whether by
photograph, painting or sculpture."  Id. at 1028.

        The use in advertisements of "look-alikes" -- models
who look like celebrities -- has generated lawsuits.  The Supreme
Court, New York County, held that the use in an advertisement of
a model who looked like Jacqueline Kennedy Onassis violated
sections 50 and 51.  Onassis v. Christian Dior-New York, Inc.,
122 Misc. 2d 603 (N.Y. Sup. Ct. 1984).  The court held that "a
representation which conveys the essence and likeness of an
individual, . . . which was intended to be, and did, in fact,
convey the idea that it was the plaintiff" was a picture or
portrait for purposes of the Civil Rights Law.  Id. at 611.

        In contrast, in Allen v. National Video, Inc., a case
involving the use in an advertisement of a Woody Allen look-
alike, Judge Motley declined to apply section 51, concluding that
she would have to reach a "somewhat strained construction" of the
statute to hold that it governed.  610 F. Supp. at 624.  The
court framed the question as whether "the mixture of fantasy and
reality [in the advertisement] suggested almost unavoidably the
actual presence of the real-life celebrity," that is, whether

-9-

"the photograph in question . . . create[d], as a matter of law, the illusion of Woody Allen's actual presence in the advertisement." <u>Id.</u> at 623-24.  The court concluded that the claim was more appropriately analyzed as a Lanham Act claim.  <u>Id.</u> at 624.

Judge Motley recognized in <u>Allen</u> that "[t]he privacy law does not prohibit one from evoking certain aspects of another's personality."  <u>Id.</u> at 623 (citing <u>Lombardo v. Doyle, Dane & Bernbach, Inc.</u>, 58 A.D.2d 620 (2d Dep't 1977)).  Indeed, she held that "[m]erely suggesting certain characteristics of the plaintiff, without literally using his or her name, portrait, or picture, is not actionable under the statute."  610 F. Supp. at 621.

In <u>Lombardo</u>, the court rejected a claim under section 51 by the conductor Guy Lombardo based on a commercial showing an actor conducting a band playing "Auld Lang Syne" at a New Year's Eve party much as Lombardo had done for decades.  The court held that "it is clear that the Civil Rights Law is to be strictly construed and is not to be applied so as to prohibit the portrayal of an individual's personality or style of performance."  58 A.D.2d at 622.

b.    **Application**

There is no dispute as to the second and third elements of Burck's claim under section 51.  Defendants concede that the video and mural were used, at least in part, for commercial purposes and that Burck did not give permission, written or

-10-

otherwise, to defendants to use The Naked Cowboy likeness.  (Tr. at 5-6).  As to the first element, it is also undisputed that defendants did not invoke the name "Robert Burck" or the name of his character "The Naked Cowboy."  Nor did they use Burck's voice.  Rather, the sole issue is whether defendants used Burck's "portrait" or "picture."

I conclude that defendants did not.

First, defendants did not use an actual photograph or picture of Burck himself, nor did they use a recognizable likeness or representation of him.  See Allen, 610 F. Supp. at 622.  Obviously, no viewer would have thought that the M&M Cowboy characters were actually Burck or were intended to be him.  See Onassis, 122 Misc. 2d at 611.  The M&M Cowboy characters are not portraits or pictures of Burck, and thus defendants did not use a portrait or picture of Burck.

Second, defendants did evoke certain aspects of the character created by Burck, and they copied The Naked Cowboy's costume, but these actions were not prohibited by sections 50 and 51.  Merely evoking certain aspects of another's character or role does not violate sections 50 and 51.  See Allen, 610 F. Supp. at 623 ("The privacy law does not prohibit one from evoking certain aspects of another's personality . . . ."); Lombardo, 58 A.D.2d at 622.

The plain language of the Civil Rights Law makes it clear that the statutory right to privacy does not extend to fictitious characters adopted or created by celebrities.  Section

51 protects "any person," and section 50 limits the statutory protection to "any living person." <u>See</u> <u>Messenger v. Gruner +</u> <u>Jahr Printing & Publ'g</u>, 208 F.3d 122, 125 (2d Cir. 2000).  The Naked Cowboy is not a living person, but a character Burck takes on when performing.  The privacy statutes were not intended to protect a trademarked, costumed character publicly performed by a person.

The case law supports the conclusion that the M&M Cowboy characters depicted in the video and mural are merely personifications that do not fall within the literal meaning of "portrait" or "picture" of a person.  In <u>White v. Samsung Elecs.</u> <u>Am., Inc.</u>, 971 F.2d 1395 (9th Cir. 1992), Vanna White, the hostess of the popular game show "Wheel of Fortune," sued defendants for, among other things, violating her right to privacy under California's privacy statute, which is substantively similar to the New York privacy statute.[2] Defendants had produced an advertisement using a robot dressed in a wig, gown, and jewelry that resembled White's hair and dress. The Ninth Circuit affirmed the lower court's dismissal of her right of privacy claim on the ground that "a robot with mechanical features [was] not, for example, a manikin molded to White's precise features." <u>Id.</u> at 1397.  It thus concluded that

---

[2]    Section 3344(a) of the California Civil Code provides, in pertinent part, that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, . . . for purposes of advertising or selling, . . . without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."  Cal. Civ. Code § 3344(a).

the "caricature or impressionistic resemblance" was not a
"likeness"[3] within the meaning of the statute.[4]  The M&M
characters dressed to look like The Naked Cowboy here are
comparable to the robot made to look like Vanna White.

Burck argues that his "persona" as The Naked Cowboy
qualifies as a "portrait" or "picture" within the meaning of
section 51.  But the statutory right of privacy was not intended
to protect the "property interest of the celebrity in his or her
public identity." Allen, 610 F. Supp. at 621.  Instead, sections
50 and 51 were "primarily designed to compensate for the hurt
feelings of private people who find their identities usurped for
another's commercial gain." Id.  This statutory purpose is
reflected in the title of Article 5 of the New York Civil Rights
law, "Right of Privacy."  Although public figures do not forfeit
their right of privacy, see Onassis, 122 Misc. 2d at 614, aspects
of their public personas not captured in their physical features
or voice are not protected under the privacy statute, see Allen,
610 F. Supp. at 623 (under section 51, "the commercial use
complained of [must] amount to a 'portrait or picture' of an
individual, not merely the suggestion of some aspect of a
person's public persona").

_____

[3]    The California law is even broader than the New York
statute in that it includes the word "likeness," whereas the New
York statute does not.

[4]    The Ninth Circuit did allow White to proceed with her
right to publicity claim under California common law, which the
court concluded was "not so confined" as the statutory right of
privacy.  New York, however, does not recognize an analogous
common law right to publicity.  See Allen, 610 F. Supp. at 621.

As discussed above, the "look-alike cases" are also
instructive, for they emphasize the point that although a
representation of "any recognizable likeness, not just an actual
photograph, may qualify as a 'portrait or picture,'" id. at 622,
that likeness must be a "close and purposeful resemblance to
reality" of the actual person, Onassis, 122 Misc. 2d at 261.  In
Onassis, the court found that the advertisement created the
overall impression that plaintiff herself was in the
advertisement.  The court in Allen distinguished Onassis and
found that Allen's look-alike was not a portrait or picture as
required by section 51.  The court explained that the "'illusion'
created in Onassis was that plaintiff had actually appeared in
the advertisement," and thus the advertisement was, "as a matter
of law, a portrait of Jacqueline Onassis."  Allen, 610 F. Supp.
at 623.  In contrast, there were "several physical differences"
between the Allen look-alike and Allen himself, such as
defendant's larger eyebrows, wider face, and more uneven
complexion, and thus the court concluded that the advertisement
did not use Allen's portrait or picture.  Id. at 624.  Here, of
course, there was no "illusion" that Burck was actually in
defendants' advertisements.

Citing Loftus v. Greenwich Lithographing Co., 182 A.D.
251 (1st Dep't 1920), Burck contends that section 51 prohibits
images even where the only recognizable likeness to the plaintiff
is his or her signature costume.  In Loftus, the plaintiff was an
actress who was photographed in a "red costume representing a

-14-

rose." Id. at 252.  This costume was never worn by any person
other than the plaintiff, and she was "readily recognized from
the photograph, and particularly from the costume." Id.  To
promote a film, the defendant produced a poster that featured a
female figure with an identical costume.  Although the main
identifying feature in the infringing poster was the costume, the
basis of the court's decision was that the female figure in the
poster was such "an accurate likeness of the plaintiff" that it
was "perfectly evident that [the infringer] had and used a copy
of [plaintiff's] photograph, and that he copied the features of
the plaintiff." Id. at 254, 256.  In other words, the poster in
Loftus violated section 51 not because it depicted a unique
costume, but because it attempted to create a "portrait or
picture" of the actress herself.

        Here, there was no attempt to create a portrait or
picture of Burck himself.  Rather, the purportedly infringing
images were M&M characters wearing Burck's signature outfit.  The
images were not portraits or pictures of Burck as The Naked
Cowboy, but of M&Ms dressed as The Naked Cowboy.  Thus, they do
not violate sections 50 and 51, and accordingly, Burck's right of
privacy claim is dismissed.

    3.    **Lanham Act Claim**

        Although Burck's reliance on the privacy statutes is
misplaced, he may find redress elsewhere in the law.  Section
43(a) of the Lanham Act creates liability for "[a]ny person who,
on or in connection with any goods or services, . . . uses in

commerce . . . false or misleading representation of fact, which
is likely to cause confusion . . . as to the origin, sponsorship,
or approval of his or her goods, services, or commercial
activities by another person."  15 U.S.C. § 1125(a)(1).  This
provision of the Lanham Act "is an appropriate vehicle for the
assertion of claims of falsely implying the endorsement of a
product or service by a real person."  Albert v. Apex Fitness,
Inc., No. 97 Civ. 1151 (LAK), 1997 WL 323899, at *1 (S.D.N.Y.
Jun. 13, 1997) (quoting J. Thomas McCarthy, McCarthy on
Trademarks and Unfair Competition § 28:15 (4th ed. 1996)).

The elements of a false endorsement claim under the
Lanham Act are that the defendant, (1) in commerce, (2) made a
false or misleading representation of fact (3) in connection with
goods or services (4) that is likely to cause consumer confusion
as to the origin, sponsorship, or approval of the goods or
services.  Warner Bros. Entm't Inc. v. Ideal World Direct, 516 F.
Supp. 2d 261, 268 (S.D.N.Y. 2007); Albert Furst von Thurn und
Taxis v. Karl Prince von Thurn und Taxis, No. 04 Civ. 6107 (DAB),
2006 WL 2289847, at *10-11 (S.D.N.Y. Aug. 8, 2006).

Defendants do not dispute that Burck has alleged the
first three elements of a false endorsement claim.  Instead, they
argue that the allegations in the complaint fail to establish the
fourth prong because the video and mural are merely parodies of
The Naked Cowboy and no one would confuse these parodies for an
endorsement.  Defendants additionally argue that even if there is
a likelihood of confusion despite the creative and humorous

nature of the video and mural, parodies are protected as fair use under the First Amendment.

The Supreme Court has defined parody as "the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 580 (1994); see also Harley Davidson, Inc. v. Grottanelli, 164 F.3d 806, 813 (2d Cir. 1999) ("Supreme Court's parody explication as to copyrights . . . is relevant to trademarks"). That a trademark is being parodied may be "clear enough to result in no confusion under the statutory likelihood of confusion analysis." Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 416 (S.D.N.Y. 2002). In these "clear" cases, "parody is not really a separate 'defense' as such, but merely a way of phrasing the traditional response that customers are not likely to be confused as to source, sponsorship or approval." Id.

But even if a parody is not so obvious to negate any likelihood of confusion, it may still be raised as an affirmative defense of fair use. The First Amendment protects parodies because they are valid forms of artistic expression and criticism. Parodies "provide social benefit, by shedding light on an earlier work, and, in the process, creating a new one," and thus "has an obvious claim to transformative value." Campbell, 510 U.S. at 579. Whether the parody defense is used in the likelihood of confusion analysis or as an affirmative defense, the end result is the same if the defendant successfully asserts

-17-

it:  the plaintiff may not recover for the defendant's use of his trademark.

Defendants argue that the M&M Cowboy characters "conjure up just enough of Burck's trademark . . . for consumers to recognize the target of the parody, while at the same time making 'obvious changes to the marks that constitute the joke.'" (Def. Mem. at 14).  Defendants also argue that the M&M Cowboy characters must be considered in context:  the video and mural "displayed the M&M'S Cowboy Characters not in isolation, but rather as part of a series of parodies of the 'New York City experience.'"  (Id. at 16).  For instance, one M&M character is a parody of King Kong, climbing the Empire State Building; another is dressed and posed like the Statue of Liberty; and another rides in a carriage through Central Park.

Whether the M&M Cowboy characters were parodies of The Naked Cowboy, however, raises factual questions that are not for the Court to decide at this stage of the litigation.  Some consumers, as defendants argue, may view the M&M Cowboy characters as a part of a larger work depicting New York scenes and parodying famous New York characters.  But other consumers may mistakenly believe that The Naked Cowboy himself endorsed the copying of his "trademarked likeness" because the M&M Cowboy characters appear in a commercial setting (i.e., on the video billboard and inside the M&M World store).  Moreover, even assuming that the M&M Cowboy characters were parodies, a factfinder may nevertheless conclude that the parodies were too

weak to negate the potential for consumer confusion.  <u>See</u>
<u>Schieffelin & Co. v. Jack Co. of Boca, Inc.</u>, 725 F. Supp. 1314,
1324 (S.D.N.Y. 1989) (determining whether parody is sufficiently
strong to destroy consumer confusion is an issue for the jury);
<u>Geary</u>, 831 F. Supp. at 275 (concluding that "it is not true that
a reasonable viewer would necessarily understand that defendants
were satirizing a commercial of independent origin or that
[plaintiff] had no association with [the adaptation of the
commercial]").

        On a motion to dismiss, the Court must accept the
factual allegations in the complaint and may consider only
whether the pleading plausibly states a claim for relief.  <u>Iqbal</u>,
490 F.3d at 157-58.  Here, the complaint alleges that the M&M
Cowboy characters, dressed just like The Naked Cowboy, "implied,
falsely, that Burck's character, The Naked Cowboy, endorse[d] the
M&M product." (Compl. ¶ 41).  The complaint plausibly argues
that consumers would believe that the M&M Cowboy characters were
promoting a product rather than merely parodying The Naked
Cowboy, and that viewers would believe that The Naked Cowboy had
endorsed M&Ms.  Hence, the complaint has alleged sufficient facts
to support a false endorsement claim.  Accordingly, defendants'
motion to dismiss the trademark infringement claim is denied.

C.    **Plaintiff's Motion**

    1.    **Pleading Standard**

        Rule 12(f) of the Federal Rules of Civil Procedure
provides that a "court may strike from a pleading an insufficient

-19-

defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); <u>see</u> <u>Emmpresa Cubana Del Tabaco v. Culbro Corp.</u>, 213 F.R.D. 151, 155 (S.D.N.Y. 2003). But courts "should not tamper with the pleadings unless there is a strong reason for so doing." <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir. 1976). Motions to strike affirmative defenses are thus "generally disfavored," <u>Emmpresa Cubana Del Tabaco</u>, 213 F.R.D. at 155 (internal quotation marks and citations omitted), and should be denied "unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation," <u>Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.</u>, No. 06 Civ. 4624 (PKL), 2008 WL 1910503, at *4 (S.D.N.Y. Apr. 30, 2008).

Moreover, the standards for a Rule 12(b)(6) motion to dismiss also apply to a motion to strike an affirmative defense pursuant to Rule 12(f). <u>Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.</u>, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008).

### 2.  **The Parody and Related Defenses**

Burck moves to strike the parody, fair use, and First Amendment defenses on two grounds.[5]  First, he contends that the video and mural were not parodies at all, and thus not entitled to protection as fair use under the First Amendment. But as discussed above, whether the M&M Cowboy characters were parodying

---

[5]  The parody, fair use, and First Amendment defenses are substantively the same. Parody is a form of fair use, and both are protected under the First Amendment. <u>Campbell</u>, 510 U.S. at 579-80. (<u>See</u> Tr. at 6).

The Naked Cowboy is a factual issue that cannot be decided on a motion to dismiss or a motion to strike.  This argument is accordingly rejected.

Second, Burck contends that even if the M&M Cowboy characters were parodies of The Naked Cowboy, the parody defense must be stricken from the pleadings because the defense does not apply to a parody that advertises a product, as opposed to a parody that is the actual product.  He argues that because "a valid parody must communicate an expressive idea" (Pl. Mem. at 7), the First Amendment does not protect "a parody which bears no relation to the product it advertises [because it] cannot conceivably contain a substantive message or expressive idea" (id. at 9).

Courts have recognized, however, that a parody may have "hybrid" uses, i.e., a parody can be a product and, at the same time, advertise that product.  A title of a film is a classic example.  In Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989), acclaimed actress Ginger Rogers sued for trademark violation on the ground that a film about two fictional Italian cabaret performers, titled "Ginger and Fred," confused potential viewers as to her connection with the film.  The defendants argued that the title was entitled to First Amendment protection as an artistic expression.  The Second Circuit recognized that

> Titles, like the artistic works they
> identify, are of a hybrid nature, combining
> artistic expression and commercial promotion.
> The title of a movie may be both an integral
> element of the film-maker's expression as
> well as a significant means of marketing the

> film to the public.  The artistic and
> commercial elements of titles are
> inextricably intertwined.

Id. at 998.  To balance the rights of the trademark owner against
the interests of free speech, the Second Circuit adopted a
balancing test for trademark cases implicating artistic
expression:  trademark protection is afforded "only where the
public interest in avoiding consumer confusion outweighs the
public interest in free expression."  Id. at 999.  Applying the
test to the case, the Second Circuit dismissed Ginger Rogers's
trademark claim in light of the title's "artistic relevance to
the underlying work."  Id.

Here, defendants likewise argue that the video and
mural featuring the M&M Cowboy characters were commercial in part
and artistic in part.  (Tr. at 5-6).  Indeed, the commercial
aspect of the video and mural is subtle -- they do not advertise
or describe the product itself -- while the entertainment aspect
is obvious.  The animated M&M candies depict various scenes in
New York that, defendants argue, "convey a humorous message" to
encourage "consumers [to] see the humor in familiar New York
characters and experiences."  (Def. Opp. at 19).  The mural, in
particular, is more artistic than commercial, as it is primarily
a humorous painting of Times Square, with key landmarks and
fixtures -- including The Naked Cowboy -- transformed into M&M
characters or altered to incorporate the M&M logo or the theme of
candy.  Because a parody may be "of a hybrid nature, combining
artistic expression and commercial promotion," it is valid to

plead a parody defense even where the parody is used in part for advertising purposes. See, e.g., N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC, 293 F.3d 550, 555-56 (2d Cir. 2002) (use of parody to promote casino held non-infringing). Accordingly, Burck's motion to strike the parody defense is denied.

**CONCLUSION**

For the reasons set forth above, Burck's motion is denied and defendants' motions are denied in part and granted in part. Chute's motion to dismiss and Mars's motion for judgment on the pleading are granted with respect to the right to privacy claim, but denied with respect to the trademark infringement claim. Counsel shall appear for a pretrial conference on July 11, 2008 at noon.

SO ORDERED.

Dated: New York, New York
June 23, 2008

DENNY CHIN
United States District Judge

**APPEARANCES:**

For Plaintiff:

      HALBERSTADT CURLEY LLC
          By:  Scott M. Rothman, Esq.
      1100 E. Hector Street, Suite 425
      Conshohocken, PA  19428

          - and -

      KEVIN T. MULHEARN, P.C.
          By:  Kevin T. Mulhearn, Esq.
      60 Dutch Hill Road, Suite 8
      Orangeburg, NY  10962

For Defendants:

      ARENT FOX LLP
          By:  Joseph R. Price, Esq.
             Ross Q. Panko, Esq.
             Leslie K. Mitchell, Esq.
             Sarah I. Marks, Esq.
      1675 Broadway
      New York, New York  10019